UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| REBECCA LARA, individually and As Personal Representative of the Estate of Gisele Lara, | ) ) ) ) | |
| Plaintiff, | ) ) | CV. NO.: 1:25-cv-04560-JPB |
| v. | ) ) ) | |
| BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA, *et. al.*, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

COME NOW the Board of Regents of the University System of Georgia (the "Board"), Michael Newbrey ("Newbrey"), in his individual capacity, Laura Bennett ("Bennett"), in her individual capacity, and Sarah Secoy ("Secoy"), in her individual capacity, named as defendants in the above-referenced matter and referred to collectively as "Defendants," and file this memorandum in support of their motion to dismiss certain claims asserted against them by Plaintiff Rebecca Lara ("Plaintiff"), individually and as Personal Representative of the Estate of Gisele Lara ("Lara"), showing the court as follows:

## BACKGROUND

Plaintiff's claims relate to the August 18, 2023 murder of Lara (the "Incident") by Nathan Janik ("Janik").  (*See generally* Doc. 1.)  Both Lara and Janik were students at Columbus State University ("CSU") at the time of the Incident, and the Incident occurred on the campus of CSU.  (*Id.*)  As alleged in Plaintiff's complaint, the Board is the governing authority over the University System of Georgia ("USG"), including CSU.  (*Id.*, ¶ 109.)  Newbrey was at all relevant times a professor at CSU.  (*Id.*, ¶ 113.)  Secoy was the Title IX coordinator at CSU at all relevant times.  (*Id.*, ¶ 114.)  And Bennett was the Chief of the CSU Police Department at all relevant times.  (*Id.*, ¶ 115.)

According to Plaintiff's complaint, Lara and Janik were classmates at CSU and participated in research trips during the summer of 2023.  (*Id.*, ¶ 36.)  Plaintiff alleges that at some time during the summer of 2023, Janik raped Lara.  (*Id.*, ¶ 37.)  According to Plaintiff, prior to the start of classes in August 2023, Lara learned that Janik wanted to be in the same research group as Lara.  (*Id.*, ¶¶ 40-42.)  Plaintiff alleges that Lara was concerned about this and communicated her concerns to her professor, Newbrey.  (*Id.*, ¶¶ 42.)  Plaintiff alleges that on or about August 14, 2023, Lara met with Newbrey and informed him that she did not feel comfortable working in a research group with Janik because he had been harassing her and making her feel uncomfortable and unsafe.  (*Id.*, ¶ 48.)  Plaintiff informed her boyfriend, Matthew Gilbert ("Gilbert"), that Newbrey had assured her that Janik would not be in the same research group.  (*Id.*, ¶¶ 48-49.)

Plaintiff alleges that Lara again met with Newbrey on or about August 16, 2023 and notified him (Newbrey) that she did not feel comfortable being around Janik or working with him. (*Id.*, ℙ 57.) According to Plaintiff, during this meeting on August 16, 2023, Lara informed Newbrey that Janik had raped her and was continuing to stalk and sexually harass her. (*Id.*, ℙℙ 57-59.) At some point after Lara met with Newbrey on August 16, 2023, Gilbert also spoke to Newbrey and notified Newbrey that Janik had raped Lara. (*Id.*, ℙ 60.) At 5:47 p.m. on August 16, 2023, Newbrey submitted a "Create Care" report (the "Report"), which is a form used to report threatening behavior. (*Id.*, ℙ 61.) In the Report, Newbrey marked the situation as "Critical." (*Id.*, ℙ 67.)

According to Plaintiff, CSU officials were notified of the Report, including Secoy and Bennett. (Id, ℙ 64.) On the morning of August 17, 2023, Secoy sent an email to Lara seeking to schedule a meeting with Lara regarding the Report. (*Id.*, ℙ 66.) There is no allegation that Lara responded to Secoy's request to schedule a meeting. (*See generally id.*) According to Plaintiff, both Newbrey and Secoy notified Janik of Lara's requests for "accommodations and safety measures." (*Id.*, ℙ 76-77.)

Plaintiff alleges that, on or about 9:00 a.m. on August 18, 2023, Newbrey "observed [Lara] and [Janik] outside of a class building having [an] altercation but continued walking to his classroom" and that Newbrey "did not intervene or request campus police." (*Id.*, ℙ 79.) According to Plaintiff, Lara and Janik arrived to class five minutes late and appeared distressed. (*Id.*, ℙℙ 81-83.) Plaintiff further alleges that, after class on August 18, 2023, Janik followed Lara to her parked car and shot

and killed Lara while she sat in her vehicle.  (*Id.*, ¶¶ 88-91.)  Janik then shot and killed himself.  (*Id.*, ¶ 91.)

Plaintiff filed her complaint on August 12, 2025 and asserted claims against the Board as well as Newbrey, Bennett, and Secoy in their individual capacities, alleging violations of Lara's rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX") and Lara's Constitutional rights.  (Doc. 1.) Plaintiff asserts claims for deliberate indifference pursuant to Title IX against the Board, Secoy, and Newbrey.  (*Id.*, ¶¶ 119-253.)  In addition, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against the Defendants alleging violations of Lara's rights to equal protection under the Fourteenth Amendment of the United States Constitution and Title IX.  (*Id.*, ¶¶ 254-314.)  For the reasons discussed herein, Plaintiff's Title IX claims against Newbrey and Secoy as well as Plaintiff's § 1983 claims are subject to dismissal.  Thus, should this motion be granted, only Plaintiff's Title IX claim against the Board will remain.

## ARGUMENT

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must . . . contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint does not state a facially plausible claim for relief if it shows only a sheer possibility that the defendant acted unlawfully." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 Fed. Appx. 318, 322 (11th Cir. 2009) (internal quotations omitted).

A complaint must present more than mere legal conclusions, which the court is not bound to accept as true. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018). Courts should dismiss a complaint that relies on "[c]onclusory allegations" and "unwarranted deductions of fact or legal conclusions masquerading as facts." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). And in cases such as this, with multiple defendants, Plaintiffs cannot merely "lump" all the defendants together with generalized allegations but rather must provide allegations as to each individual defendant's conduct. *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. Appx. 81, 86 (11th Cir. 2008) ("[T]he complaint should contain specific allegations with respect to each defendant.").

Further, the Eleventh Amendment to the United States Constitution states "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United Sates by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. "Because the Eleventh Amendment represents a constitutional limitation on the federal judicial power established in Article III, . . . federal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment" and such claims are subject to dismissal pursuant to Rule 12(b)(1). *McClendon v. Georgia Depot. of Cmty. Health*, 261 F.3d 1252, 1256-57 (11th Cir. 2001); *see also Taylor v. U.S. Postal Serv.*, 364 Fed. Appx. 600, 601 n.3 (11th Cir. 2010) ("[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists.").

Here, Plaintiff's Title IX claims against Newbrey and Secoy are subject to dismissal because Title IX does not provide for a cause of action against an individual defendant. Plaintiff's § 1983 claims against the Board are subject to dismissal because they are barred by Eleventh Amendment immunity. And Newbrey, Secoy, and Bennett are entitled to qualified immunity from Plaintiff's § 1983 claims against them. Finally, to the extent Plaintiff seeks to assert a claim individually pursuant to Title IX and § 1983, those claims fail to assert a claim to relief.

## I.    Plaintiff's Title IX claims against Newbrey and Secoy are subject to dismissal for failure to state a claim.

In Counts II and III of her complaint, Plaintiff asserts claims for deliberate indifference under Title IX against Newbrey and Secoy in their individual capacities. (Doc. 1, ¶¶ 135-253.) In relevant part, Title IX states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance" except for certain enumerated exceptions. 20 U.S.C. § 1681(a). The Supreme Court held in *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999), that § 1681 creates a private cause of action against a Title IX funding recipient for deliberate indifference as it relates to student-on-student sexual harassment. The Eleventh Circuit, however, has clarified that "[i]ndividual school officials . . . may not be held liable under title IX." *Hartley by Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999); *see also Floyd v. Waiters,* 133 F.3d 786, 789 (11th Cir.) ("[A] Title IX claim can only be brought

against a grant recipient . . . and not an individual.") (citations and quotations omitted) *vacated on other grounds* 119 S. Ct. 33 (1998), *reinstated,* 171 F.3d 1264 (11th Cir.1999) *cert. denied*, 120 S. Ct. 215 (U.S. 1999)); and *Robinson v. Smith*, 2015 U.S. Dist. LEXIS 89605, at \*6 (M.D. Ga. July 10, 2015) ("There is also no individual liability under . . . Title IX."). Accordingly, Plaintiff's claims for deliberate indifference pursuant to Title IX against Secoy and Bennett fail to state a claim and are subject to dismissal.

## II.    Plaintiff's § 1983 claims against the Board are barred by Eleventh Amendment immunity and therefore subject to dismissal.

In Count V and VI of her complaint, Plaintiff asserts a § 1983 claim for violation of Lara's Equal Protection rights against the Board as well as the other Defendants. (Doc. 1, ¶¶ 268-302.) Plaintiff purports to assert her claim in Count V pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1977). (*Id*., p. 63.) Presumably, in this claim, Plaintiff attempts to hold the Board liable under § 1983 for the actions and or omission of its employees. Regardless, Plaintiff's § 1983 claims against the Board are subject to dismissal.

Courts have determined that the Board is "considered a state entity that is an arm of the state of Georgia for purposes of the Eleventh Amendment." *Nicholl v. Bd. of Regents of Univ. Sys. of Ga*., 706 Fed. Appx. 493, 495 (11th Cir. 2017); *see also Lapides v. Bd. of Regents of Univ. Sys. of Ga*., 535 U.S. 613, 616-17 (2002); *Stroud v. McIntosh*, 722 F.3d 1294, 1299 (11th Cir. 2013); *Williams v. Bd. of Regents of Univ. Sys. of Ga*., 477 F.3d 1282, 1301-02 (11th Cir. 2007)) *superceded by statute on other grounds as stated in AAA Cooper Transp. v. West-Pak, Inc.*, 2011 U.S. Dist.

LEXIS 7788 (M.D. Ala. July 18, 2011). For that reason, *Monell*, which provides for liability against municipalities, is inapplicable to Plaintiff's claim against the Board. *Mercer v. Youghn*, 2025 U.S. Dist. LEXIS 194307, at *44 (M.D. Ga. Sep. 30, 2025) ("Under *Monell*, a *municipality* may be liable under § 1983 for constitutional violations committed by its employees pursuant to a municipal policy or custom."). Thus, to the extent Plaintiff relies on *Monell* for her claim against the Board in Count V, that claim fails. Moreover, because the Board is an arm of the State, Plaintiff's § 1983 claims against the Board are barred by Eleventh Amendment immunity. "The Eleventh Amendment protects a State from being sued in federal court without the State's consent." *Temple v. McIntosh,* 2019 WL 287482, *4 (S.D. Ga. 2019) (citing *Manders*, 338 F.3d 1304, 1308 (11th Cir. 2003)). "Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued." *King v. King,* 2017 WL 4018857, *4 (M.D. Ga. Sep. 12, 2017). And "Congress has not abrogated states' immunity from § 1983 claims." *Williams*, 477 F.3d at 1301. Accordingly, Plaintiff's § 1983 claims against the Board are barred by Eleventh Amendment immunity. *See Sasser v. Bd. of Regents*, 2021 U.S. Dist. LEXIS 188703, at *8 (N.D. Ga. Sep. 30, 2021) (dismissing § 1983 claims against the Board as barred by the Eleventh Amendment). Accordingly, Plaintiff's § 1983 claims against the Board are subject to dismissal pursuant to Rule 12(b)(1). *See Taylor*, 364 Fed. Appx. At 601 n.3

**III.    Newbrey, Secoy, and Bennett are entitled to qualified immunity as it relates to the § 1983 claims Plaintiff asserts against them, and, therefore, those claims are subject to dismissal.**

In Counts IV through VII of her complaint, Plaintiff asserts claims against Newbrey, Secoy, and Bennett (hereinafter collectively the "Individual Defendants") in their individual capacities. In Counts IV and V, Plaintiff asserts claims against all of the Individual Defendants for violation of the Equal Protection Clause of the Fourteenth Amendment. In Counts VI, Plaintiff asserts supervisory liability claims against Secoy and Bennett. And in Count VII, Plaintiff asserts a claim against Bennett for "failure to train." As explained below, the Individual Defendants are entitled to qualified immunity with respect to Plaintiff's § 1983 claims.

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003). Because "qualified immunity is a privilege that provides an *immunity from suit* rather than a mere defense to liability . . . , the Supreme Court instructs courts to resolve immunity questions at the earliest possible stage in litigation." *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (citations and internal quotation marks omitted; emphasis in original); *see also Crawford v. Carroll*, 529 F.3d 961, 978 (11th Cir. 2008) ("'The Supreme Court has urged us to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only.'") (citation omitted).

9

The Individual Defendants are entitled to qualified immunity in regard to Plaintiff's § 1983 claims because: (1) they were acting within their discretionary authority; (2) they did not violate Lara's Constitutional rights; and (3) they did not violate clearly established law.

## A. The Individual Defendants were acting within their discretionary authority.

"A governmental official proves that he acted within the purview of his discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Sims v. Metropolitan Dade County,* 972 F.2d 1230, 1236 (11th Cir. 1992). "To determine whether an official is acting within his discretionary authority, the Court look[s] to the general nature of the [official's] action, temporarily putting aside the fact that it may have been committed . . . in an unconstitutional manner." *Hunter v. Bell,* 2010 WL 11601573, *6 (N.D. Ga. 2010). "So viewed, an official acts within his discretionary authority when he 'is engaged in a legitimate job-related function.'" *Id.*; *see also McNeeley v. Wilson,* 649 Fed. Appx. 717, 721 (11th Cir. 2016); and *Holloman v. Harlan*, 370 F.3d 1252, 1265-66 (11th Cir. 2004) (stating that an official performs a discretionary function when his acts "but for the constitutional infirmity, would have fallen within his legitimate job description," and the acts were done "through means that were within his power to utilize"). Thus, in order to determine whether a defendant was acting within his discretionary authority, it is necessary to examine the conduct at issue.

Here, Plaintiff's Equal Protection claims against the Individual Defendants relate to their responses to the allegations of sexual harassment against Janik pursuant to the Individual Defendants' roles as employees of the Board. (*Id.*, ¶¶ 254-285.) And Plaintiff's supervisory liability claims against Secoy, in her role as Title IX coordinator for CSU, and Bennett, as Chief of the CSU Police Department, relate to their training of their employees in relation to responding to complaints of sexual harassment. (*Id.*, ¶¶ 286-302.) Moreover, Plaintiff's supervisory liability claim against Bennett relates to the alleged unconstitutional polices implemented by Bennett as chief of police in relation to the handling of complaints of sexual harassment. (*Id.*, ¶¶ 303-313.) As such, when the Individual Defendants were engaged in the functions that form the basis of Plaintiff's claims, the Individual Defendants were acting within their discretionary authority. Therefore, the Individual Defendants are entitled to qualified immunity unless they violated Plaintiff's clearly established Constitutional rights.

## B. The Individual Defendants did not violate Plaintiff's Constitutional rights.

As discussed below, Plaintiff fails to allege a violation of Lara's Equal Protection rights because she has not alleged a viable comparator to support her claim. In addition, Plaintiff has not alleged that any failure to train on the part of Secoy and Bennett or policy implemented by Bennett caused a violation of Lara's Constitutional rights.

**1. Plaintiff has not alleged a viable Equal Protection claim.**

In Counts IV and V of her complaint, Plaintiff alleges that the Individual Defendants discriminated against Lara in violation of her Equal Protection rights. (Doc. 1, ¶¶ 254-285.)  To state a viable claim for violation of the Equal Protection Clause, Plaintiff must show Lara was "treated differently from other similarly situated individuals." *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006).  In addition, Plaintiff must assert that the "challenged action was motivated by an intent to discriminate." *Elston v. Talladega Cty. Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir. 1993).  "[D]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." *Whitaker v. Bd. of Regents of the Univ. Sys. of Ga.*, 2021 U.S. App. LEXIS 27544, at *10-11 (11th Cir. Sep. 14, 2021) (quoting *Campbell*, 434 F.3d at 1314).  "A similarly-situated comparator means a person who is 'similarly situated in all material respects.'" *Id.* (quoting *Lewis v. City of Union City*, 918 F.3d 1213, 1218, 1220 n.5 (11th Cir. 2019)).

In support of her Equal Protection claims, Plaintiff alleges that, regarding their response to the complaint against Janik, the Individual Defendants "based their decisions on irrational gender stereotypes. (*Id.*, ¶ 258, 273.)  Plaintiff further alleges that the Individual Defendants "classified [Lara] by her gender and engaged in differential treatment that violated [Lara]'s" rights under the Fourteenth Amendment and the Equal Protection clause.  (*Id.*, ¶¶ 259-60, 274-75.)  To that end, Plaintiff alleges that Defendants "did not respond to the report of stalking or rape by a male student the way they would have responded to a claim by a male student of being harassed, attacked, or threatened." (*Id.*, ¶ 262, 276.)

These conclusory allegations cannot form the basis of a viable § 1983 claim because they are not entitled to the assumption of truth and are properly disregarded at the motion to dismiss stage. *McCullough v. Finley,* 907 F.3d 1324, 1333 (11th Cir. 2018); *Hammonds v. Gray Transportation,* 371 F.Supp.3d 1340, 1347 (M.D. Ga. 2019); *Wilder v. Fisher,* 2020 WL 5790403, *3 (M.D. Ga. 2020) (when ruling on a motion to dismiss, "courts must identify conclusory allegations and then discard them - not on the ground that they are unrealistic or nonsensical but because their conclusory nature 'disentitles them to the presumption of truth.'"). Moreover, these allegations are insufficient to support an Equal Protection claim because Plaintiff has alleged no facts from which the Court can draw a reasonable inference that Lara was treated differently from another similarly-situated individual. *See Twombly*, 550 U.S. at 555. In other words, Plaintiff has not identified a requisite comparator to support her Equal Protection claims. *See Whitaker*, 2021 U.S. App. LEXIS 27544, at *13. And for this reason, Plaintiff's Equal Protection claims are subject to dismissal. *See id.* (affirming the dismissal of a plaintiff's Equal Protection for failing to identify a comparator); *see also Sasser v. Bd. of Regents*, 2021 U.S. Dist. LEXIS 188703, at *11 (N.D. Ga. Sep. 30, 2021) (dismissing the plaintiff's Equal Protection claims). Accordingly, because Plaintiff has not asserted a violation of her Equal Protection claims, the Individual Defendants are entitled to qualified immunity as it relates to Plaintiff's claims asserted in Counts IV and V.

### 2. Plaintiff's § 1983 supervisory liability claims against Secoy and Bennett fail to state a violation of Lara's Constitutional rights.

In Count VI of her complaint, Plaintiff asserts a § 1983 claim against Secoy and Bennett for failure to train. With regard to this claim, Plaintiff does not specify what Constitutional right of Lara was violated as a result of the purported failure to train, and thus Plaintiff's allegations are insufficient for this reason alone. In Count VII, Plaintiff asserts a § 1983 claim against Bennett for "unconstitutional policy/policy likely to result in constitutional deprivation." It appears Plaintiff alleges that Bennett's policies caused a deprivation of Lara's Equal Protection rights. Regardless, these claims, which are both in essence "supervisory liability" claims are subject to dismissal.

Secoy and Bennett cannot be held liable "on the basis of *respondeat superior* or vicarious liability." *Clark v. Sheffield,* 807 Fed. Appx. 910, 917 (11th Cir. 2020); *Est. of May,* 2020 WL 5541086 at *7 ("It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."). Thus, to the extent Plaintiff's § 1983 claims against Secoy and Bennett are based on a theory of vicarious liability, they necessarily fail. Instead, to hold Secoy and Bennett liable, Plaintiff must show a causal connection between the actions of Secoy and Bennett and the alleged deprivation of Lara's Constitutional rights. *Clark,* 807 Fed. Appx. at 917; *Harris-Evans,* 2022 U.S. Dist. LEXIS 218794, *9. Plaintiff can show such a causal connection through personal participation by Secoy and Bennett in the alleged violation. *See Id.* To that end, regarding Secoy, Plaintiff alleges only that

she was notified of the Report and that she emailed Lara in an attempt to schedule an appointment with Lara. As to Bennett, Plaintiff alleges only that Bennett was notified of the Report. These actions are insufficient to show that Secoy and Bennett personally participated in any violation of Lara's Constitutional rights. Thus, Plaintiff cannot rely on any personal participation on the part of Secoy and Bennett to support liability.

In lieu of personal participation, "[t]here are three ways to establish a causal connection between a supervisor's actions and the unlawful conduct: 1) 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so'; 2) 'when a supervisor's custom or policy results in deliberate indifference to constitutional rights'; or 3) 'when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Dickinson v. Cochran,* 833 Fed. Appx. 268, 272 (11th Cir. 2020). "'Under certain circumstances,' too, 'a law enforcement agency's failure to adequately train its officers may constitute a 'policy' giving rise to governmental liability.'" *Christmas v. Harris County,* 51 F.4th 1348, 1355 (11th Cir. 2022). As discussed below, the allegations in Plaintiff's complaint do not establish the requisite causal connection.

### a. There are no factual allegations that support Plaintiff's allegations of failure to train or supervise.

In Count VI, Plaintiff alleges that the Incident occurred because Secoy and Bennett allegedly failed to sufficiently train their subordinates with regard to

responding to complaints of sexual harassment and/or misconduct. (*Id.*, ¶¶ 286-302.) In addition, it appears Plaintiff's claim against Bennett in Count VII is based on an alleged failure to supervise. (*Id.*, ¶¶ 303-319.) "Failure-to-train and failure-to-supervise are separate claims." *Walker v. Dixon,* 2022 U.S. Dist. LEXIS 20344, *12 (N.D. Fla. 2022). "That said, the standard for liability is the same for both claims." *Id.* "A supervisor 'may be liable for failure to train if he had 'actual or constructive notice that a particular omission in the [ ] training program cause[d] [his] employees to violate citizens' constitutional rights,' and 'armed with that knowledge' chose to retain the training program.'" *Est. of May,* 2020 U.S. Dist. LEXIS *22 (citing *Bryant v. Buck,* 793 Fed. Appx. 979, 884 (11th Cir. 2019)); and *Wright v. Sheppard,* 919 F.2d 665 (11th Cir. 1990) (recognizing that a sheriff can be held liable for a failure to supervise when he was on notice of a need for improved supervision); *see also Gold v. Miami,* 151 F.3d 1346, 1351 (11th Cir. 1998). "Actual or constructive notice may be established by showing a pattern of similar constitutional violations by untrained employees." *Est. of May,* 2020 U.S. Dist. LEXIS, *22; *Harris-Evans v. Lockett,* 2022 U.S. Dist. 218794, *10 (M.D. Ga. 2022) ("To establish that supervisor was on actual or constructive notice of the deficiency of training, '[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary.'") (quoting *Connick v. Thompson,* 563 U.S. 51, 61 (2011)).

Here, Plaintiff alleges that Secoy and Bennett were on notice of the need to train their employees with regard to responding to complaints of sexual harassment because they were aware of the prevalence of those issues on college campuses. (Doc. 1, ¶¶ 291-292.) But Plaintiff does not allege a "pattern of similar constitutional

violations" at CSU.  *Id.*  As a result, Plaintiff cannot show that Secoy and Bennett were on notice that *their training* of subordinates (or even the lack thereof) would likely lead to a deprivation of Lara's Constitutional rights, and, therefore, Plaintiff cannot rely on a failure to train or failure to supervise to establish the causal connection necessary to sustain a § 1983 supervisory liability claim against the Secoy and Bennett.  *Id.* (dismissing the plaintiff's claim for supervisory liability based on a failure to train due to plaintiff's failure to "allege a pattern of similar constitutional violations by untrained employees); *McDaniel v. Yearwood,* 2012 U.S. Dist. LEXIS 19667, *16 (N.D. Ga. 2012) (dismissing plaintiff's failure to train or supervise claim because plaintiff neither alleged what training or supervision was lacking or needed nor did plaintiff allege a history of widespread abuse to put the supervisor on notice of a need to train or supervise).

> **b. There are no factual allegations to support the contention that a policy or custom of Secoy and Bennett resulted in a violation of Lara's Constitutional rights.**

As the Eleventh Circuit has explained,

> A policy is a decision that is officially adopted by the [governmental entity], or created by an official of such rank that he or she could be said to be acting on behalf of the [governmental entity].  A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law.

*Christmas,* 51 F.4th at 1356 (internal citations omitted).  "Demonstrating a policy or custom requires showing a persistent or wide-spread practice." *Id.*  With those descriptions in mind, the allegations in Plaintiff's complaint do not establish that any

custom or policy of Secoy or Bennett led to the alleged violations of Lara's Constitutional rights.

To the extent Plaintiff seeks to rely on a purported policy or custom of Secoy and Bennett in support of her claims in Count VI and Count VII, Plaintiff has not alleged sufficient facts to support such a claim. In support of Count VII of her complaint, Plaintiff alleges that Bennett's policies and/or customs violated Lara's Equal Protection rights. (Doc. 1, ⁋ 303-323.) Plaintiff alleges that Bennett, in her role as the Chief of Police for the CSU Police Department, was responsible for, promulgated, and implemented policies and/or customs that "required or encouraged subordinates to respond to reports of sexual harassment, stalking, or sexual battery with deliberate indifference based on gender stereotypes." (Doc. 1, ⁋ 304, 305.) In support of this claim, Plaintiff alleges that Bennett "promulgated, created, implemented, maintained and/or was responsible for policies or customs that required or encouraged subordinates to" do the following:

> ignore reports of sexual harassment or rape; ignore assignments to investigate reports of sexual harassment; respond to reports of sexual harassment in an untimely manner; investigate reports of sexual harassment in an untimely manner; investigate victims, but not their harassers; ignore information that could be obtained by checking a harasser's parole status; intimidate victims of sexual harassment; treat victims of sexual harassment with hostility and disdain; minimize reports of sexual harassment; respond to sexual harassment in a flippant manner; express disinterest in the harassment; blame victims for the harassment; accuse victims of lying about the harassment; otherwise discourage women from reporting harassment or from taking action against their harassers; refuse requests to obtain or preserve forensic evidence; and ignore laws that require law enforcement to provide

victims of sexual harassment with information about their rights and
the resources available to them.

(Doc. 1, ⁋ 307.)   Plaintiff also alleges that Bennett "promulgated, created,
implemented, maintained, and/or [was] responsible for unconstitutional policies or
customs of failing to immediately seek out and detain or question CSU students
formally reported for rape, stalking, and/or sexual harassment on campus." (*Id.*, ⁋
308.)

For both her claims in Count VI and Count VII, Plaintiff does not identify the
specific policy at issue or the parameters of the alleged policy.  Rather, she simply
alleges that there was a policy and that it encouraged inadequate handling of sexual
harassment allegations.  As such, Plaintiff's allegations are conclusory, and Courts
have held that a plaintiff cannot establish the existence of a policy through
conclusory allegations. *See Piazza v. Jefferson Cty., Ala.,* 923 F.3d 947, 958 (11th
Cir. 2019) ("[B]ecause [the] complaint contains only conclusory assertions that jail
officers were indifferent to [decedent's] needs pursuant to certain policies or customs
– without alleging any facts concerning those policies or customs – [plaintiff] has
not stated a claim for supervisory liability for deliberate indifference to medical
needs."); *Rankin v. Bd. of Regents of Univ. Sys. of Ga..,* 732 Fed. Appx. 779, 783
(11th Cir. 2018) (holding that plaintiff's claim fails "because most of the allegations
supporting it are conclusory, and to the extent some are based on facts, they are
limited to his own experience and as a result do not suggest a policy or custom of
deliberate indifference to constitutional rights."); *Weeks v. Colquitt Cnty.,* 2025 U.S.
Dist. LEXIS 53472, *32 (M.D. Ga. March 24, 2025) ("Plaintiff has only made a

conclusory allegations that Defendants Colquitt County and Sheriff Howell 'have a persistent and widespread practice of allowing deputies to violate . . . policies[,] procedures[,]' and the constitutional rights of others, but has not provided any other examples of violations within the Colquitt County Sheriff's Office.  Such conclusory allegations are not sufficient.") (internal citations omitted); *Estate of May v. Fulton County,* 2020 U.S. Dist. LEXIS 171784, *25 (N.D. Ga. 2020) ("[T]he Court agrees that Plaintiffs' failure to cite to the official policy or plead additional allegations concerning the official policies that they assert are unconstitutional leads to a determination that Plaintiffs' allegations are conclusory and insufficient to state a claim.").  Moreover, Plaintiff has not alleged that Secoy and Bennett were on notice that their policies would lead to a violation of Lara's Constitutional rights.

In addition, Plaintiff seeks to establish a causal connection by way of a purported custom on the part of Secoy and Bennett.  In particular, Plaintiff alleges that Secoy and Bennett had a "custom of deliberate indifference to the rights of students like [Lara]."  (Doc. 1, ¶ 293.)  And as discussed, Plaintiff alleges that Bennett had a custom of ignoring or inadequately responding to accusations of sexual harassment.  (*Id.*, ¶¶ 307-08.)  These allegations of a custom do not suffice.

According to the Eleventh Circuit, demonstrating a custom "requires showing a persistent and wide-spread practice." *Myrick v. Fulton County,* 69 F.4th 1277, 1299 (11th Cir. 2023); *Thomas v. Hines,* 2023 U.S. Dist. LEXIS 150920, *8-9 (N.D. Ga. 2023) ("To establish the existence of a custom, the plaintiff must show a 'longstanding and widespread practice.'").  Thus, proving that a custom caused a constitutional harm would require Plaintiff to point to multiple incidents.  *Myrick,*

69 F.4th at 1299. "A single incident of a constitutional violation is insufficient to prove a . . . custom even when the incident involves several subordinates." *Id.*; *Estate of May,* 2020 U.S. Dist. LEXIS 171784, *27 (isolated incidents are insufficient to establish a custom).

Here, Plaintiff does not identify any occasion – other that the Incident – in which Secoy and Bennett (or even CSU) failed to adequately respond to a complaint of sexual harassment. Thus, Plaintiff has not shown a "persistent and wide-spread practice" to support her claims against Secoy and Bennett. For that reason, Plaintiff has not established that Secoy and Bennett had a custom of deliberate indifference to complaints of sexual harassment. Similarly, Plaintiff has not alleged that Bennett (or the CSU Police Department) had a custom of inadequate response to or ignoring complaints of sexual harassment.

### c. There are no factual allegations in Plaintiff's complaint that establish a history of widespread abuse.

In her complaint, Plaintiff makes no attempt to allege a history of widespread abuse at CSU that would have put Secoy or Bennett on notice that their alleged failure to train or policies and/or customs would cause any deprivation of Lara's Constitutional rights. Plaintiff does allege that Secoy and Bennett were on notice of the issue of sexual harassment and abuse on college campuses nationwide, but this is insufficient. First, as discussed, conclusory allegations are properly disregarded at the motion to dismiss stage. *Hammonds v. Gray Transportation,* 371 F.Supp.3d 1340, 1347 (M.D. Ga. 2019); *Wilder v. Fisher,* 2020 WL 5790403, *3 (M.D. Ga. 2020). Moreover, these allegations do not show that Secoy and Bennett were aware

of widespread abuse *at CSU* that would have put them on notice that their training, policies, or customs were insufficient.

Instead, Plaintiff's claims singularly rely on the Incident – and one incident cannot form a widespread history of abuse. *Christmas,* 51 F.4th at 1355 ("the deprivation that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."). As such, Plaintiff cannot rely on a "history of widespread abuse" to establish a causal connection between the actions of Secoy and Bennett and any alleged violation of Plaintiff's Constitutional rights.

In summary, "to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Harris-Evans,* 2022 U.S. Dist. LEXIS 218794, *9. Here, the alleged actions on the part of Secoy and Bennett are insufficient to show personal participation in unconstitutional conduct. And Plaintiff's allegations are otherwise insufficient to establish a causal connection. As such, the Secoy and Bennett are entitled to qualified immunity with respect to Plaintiff's § 1983 claims asserted in counts VI and VII. They are also entitled to qualified immunity because they did not violate clearly established law.

### C. The Supervisory Defendants did not violate clearly established law.

"Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or

constitutional rights of which a reasonable person would have known." *Gaines v. Wardynski,* 871 F.3d 1203, 1206. (11th Cir. 2017). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). In other words, a government official is entitled to qualified immunity unless he has received "fair warning" that his conduct deprived the plaintiff of a constitutional right. *Id.* at 739-40. Thus, the Individual Defendants are entitled to qualified immunity unless Plaintiff can show that they had "fair warning" that their conduct deprived Plaintiff of a constitutional right.

As also noted, under the qualified immunity analysis, it is Plaintiff's burden to show that the Individual Defendants violated "clearly established law," and the Eleventh Circuit has observed that the most common method of doing so is by pointing to "a materially similar case that has already been decided." *Gaines,* 871 F.3d at 1208. However, Defendants' counsel is unaware of any case that would have provided the Individual Defendants with "fair warning" that they could be held liable for a violation of Constitutional rights under the facts alleged. Thus, it cannot be said that the Individual Defendants violated clearly established law, and, therefore, they are entitled to qualified immunity with respect to Plaintiff's § 1983 claims.

## IV.    Plaintiff's claims asserted in her individual capacity are subject to dismissal.

According to Plaintiff's complaint, she asserts claims for damages both individually and in her capacity as the personal representative of the Estate of Lara. (Doc. 1, p. 1 ("[Plaintiff] filed this lawsuit individually and as Personal

　
Representative of Gisle Lara . . . .").  To the extent Plaintiff seeks to assert her Title IX deliberate indifference claims and her § 1983 claims for violations of Lara's Fourteenth Amendment and Equal Protection rights in her individual capacity, those claims are subject to dismissal.  A claim under § 1983 is "entirely personal to the direct victim of the alleged constitutional tort" and "only the purported victim, or his estate's representative(s), may prosecute a section 1983 claim . . . ." *Christie v. Lee Cty. Sheriff's Office*, No. 2:10-CV-420-FtM-36DNF,, at *6-7 (M.D. Fla. Sep. 28, 2011) (quoting Torres, 2000 U.S. Dist. LEXIS 22854, 2000 WL 35527256 at *1)) *see also Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000)). Thus, "no separate cause of action exists under § 1983 for emotional distress, loss of a loved one, or any other collateral injuries allegedly suffered personally by the decedent's family members." *Christie*, at *6-7.  Similarly, the Supreme Court has held that "Title IX provides an implied right of action *for students* who complain of sex discrimination by schools that receive federal funds."  *Joseph v. Bd. of Regents of the Univ. Sys. of Ga.*, 121 F.4th 855, 866 (11th Cir. 2024).  Accordingly, both the Title IX claims and § 1983 claims are personal to Lara and can only be alleged by Plaintiff in her capacity as personal representative of Lara's estate.  To the extent Plaintiff asserts those claims in her individual capacity, they are subject to dismissal.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court enter an order dismissing the following claims asserted by Plaintiff:  the Title IX claims asserted against Secoy and Newbrey; the § 1983 claims against the Board, Newbrey, Secoy, and Bennett; and the Title IX and § 1983 claims asserted by

Plaintiff in her individual capacity. As such, the only claims remaining will be the Title IX that Plaintiff asserts against the Board in her capacity as the Personal Representative of the Estate of Lara.

This 13th day of October, 2025.

Respectfully submitted,

Christopher M. Carr            112505
Attorney General

Loretta L. Pinkston-Pope        580385
Deputy Attorney General

Roger Chalmers        118720
Senior Assistant Attorney General

/s/ H. Thomas Shaw
Raleigh W. Rollins        613860
H. Thomas Shaw        596133
Special Assistant Attorney General

**ALEXANDER & VANN, LLP**
411 Gordon Avenue
Thomasville, GA 31792
Telephone: (229) 226-2565
Facsimile: (229) 228-0444
rrollins@alexandervann.com
tshaw@alexandervann.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in Times New Roman, 14 point font.

*s/H. Thomas Shaw*
H. Thomas Shaw

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on October 13, 2025, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

*s/ H. Thomas Shaw*
H. Thomas Shaw