**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| REBECCA LARA, as Personal Representative of the Estate of Gisele Lara, and REBECCA LARA, Individually, | |
| | CV No: 1:25-cv-04560-JPB |
| Plaintiffs, | |
| v. | |
| BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA (including Columbus State University); STATE OF GEORGIA MICHAEL NEWBREY, individually; and SARAH SECOY, individually, and in her Capacity as Title IX Compliance Coordinator for Columbus State University, and LAURA BENNETT, individually, and in her capacity as chief of the Columbus State University campus police force on August 18, 2023 | |
| Defendants. | |

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Per Fed. R. Civ. P. 15(a)(2) and LR 7.1, NDGa, Plaintiff brings this motion to amend the Complaint in light of this Court's order dismissing several claims, Plaintiff also provides a memorandum of law in support.

1. The Amended Complaint will clean up the existing claims to delete and renumber most of the Counts dismissed fully or in part by this Court in DE-19, the

order on Defendants' motion to dismiss, to representing only the claims that remain pending.

2. The Amended Complaint also fixes two deficiencies that resulted in partial dismissal in DE-19. First, while this Court found the complaint sufficient to allege a "deliberate indifference" theory for the section 1983 claim, this Court found the allegations insufficient to support a "disparate treatment" theory. Plaintiff seeks to amend to complaint to add sufficient allegations to support the "disparate theory" in addition to retaining the allegations of deliberate indifference.

3. Also, this Court found that 1983 permits a wrongful death claim but that Plaintiff failed to separately plead that theory sufficiently under Georgia and federal law. Plaintiff has added Count IV, which separately and sufficiently states a claim.

4. The proposed Amended Complaint is attached as an Exhibit.

## MEMORANDUM OF LAW

Under Fed. R. Civ. P. 15(a)(2), this Court should "freely" permit a plaintiff to amend the complaint "when justice so requires." For justice to not require granting leave to amend, one of three circumstances must be evident:

> [A] district court need not grant leave "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Huggins v. Sch. Dist. of Manatee Cnty., 151 F.4th 1268, 1286 (11th Cir. 2025). Nothing of note has happened in this case since the entry of the Order partially granting the motion to dismiss, and Plaintiff will demonstrate that amendment would not be futile. See generally Doe (K.B.) v. Hare Krishna Savannah Hotel, LLC, 346 F.R.D. 150, 160 (N.D. Ga. 2024) (rejecting claim of undue delay or prejudice whether discovery had not closed and there had been no substantial discovery in the case prior to the filing of the motion to amend). Thus, none of the three circumstances necessary to dismissing this case are present, and justice requires that the motion be granted.

**Counts II and III Are Not Reasserted**

Defendants moved to dismiss Counts II and III on the basis that Title IX does not permit claims against individuals. Plaintiff agreed, and this Court dismissed the counts. (DE-19 at 6). The subsequent counts are amended to be renumbered.

**Counts V Is Renumbered and Not Re-Asserted Against the Board of Regents**

Likewise, in response to the motion to dismiss the § 1983 claims in part against the Board of Regents, Plaintiff agreed that partial dismissal was proper, and this Court ordered that partial dismissal. (DE-19 at 6). Plaintiff has not reasserted 1983 claims against the Board or the State of Georgia, and the 1983 claims against the individual defendants are renumbered as Counts III and IV to account for the deletion of former Counts II and III.

**Count V's Reference to "Monell" Liability Has Been Cured**

The former Count V—now renumbered as Count II—was described as a claim of Monell Liability. (DE-1 at 63). At DE-19, page 8, this Court correctly stated:

> As Defendants point out, Monell liability allows a municipal corporation to be held liable for the actions of its employees if they acted pursuant to a policy or custom that violates constitutional rights. [Doc. 16, p. 4]. The individual Defendants, however, are not municipalities and thus cannot be held liable on the basis of Monell. Plaintiff never argues otherwise. Because this claim cannot proceed against individual defendants, it is hereby **DISMISSED**.

The scrivener's error claiming "Monell" liability against the individuals was meant to apply to the Board of Regents, though Plaintiff concedes that the Board is viewed as part of the State of Georgia, not a municipality, so the Board has been dropped from the Count.

**Count IV's Lack of Allegation of Intent and Disparate Treatment Has Been Cured to Permit a Disparate Treatment Theory**

This Court found that Count IV adequately alleged a "deliberate indifference" theory of relief, denying the motion to dismiss the count. This Court did observe, however, that the pleadings failed to state a claim under a "disparate treatment" theory. (DE-19 at 11). The Amended Complaint adds language that should allow Plaintiff to proceed under both theories, not just deliberate indifference.

Only a short, plain statement is required. At page 10 of its order granting partial dismissal, this Court found fault with Count IV under a disparate treatment analysis for not alleging an intent to discriminate and that the victim was similarly

situation to other persons who received more favorable treatment. This Court found:

> Here, Plaintiff has not adequately alleged that any of the individual Defendants acted with an intent to discriminate against her. Allegations that Defendants "classified [Gisele] by her gender" and that they "engaged in differential treatment" are conclusory. [Doc. 1, p. 60]. The Complaint alleges that Defendants "based their decisions" on a long list of gender stereotypes, id. at 59–60, but again, there are no specific factual allegations that raise an inference that these were truly the Defendants' motives. Likewise, the Complaint lacks specific factual allegations about similarly situated individuals that were treated more favorably than Gisele—other than a conclusory statement that Defendants "would have responded to a claim by a male student" in a different way. Id. at 61. Ultimately, to survive a motion to dismiss, a plaintiff must allege specific facts that give rise to a plausible inference that she is entitled to relief. Iqbal, 556 U.S. at 678. Plaintiff has not alleged anything more than conclusory facts as to discriminatory intent and to the existence of similarly situated individuals that were treated better. Without specific factual allegations supporting these elements, Plaintiff has failed to state a claim under a disparate treatment theory.

(DE-19 at 10-11).

This Court should not draw too harsh a line on the standard separating "plausible" claims of discriminatory intent and "conclusory" claims of discriminatory intent. There has been no discovery in the case. "Just as a plaintiff 'will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent,'…a plaintiff will always survive a motion to dismiss if his complaint contains sufficiently well-pled facts to make a claim of intentional discrimination "plausible on its face…." Duckworth v. Georgia Dep't of Hum. Servs., 2024 WL 1377650, at *3 (N.D. Ga. Mar. 31, 2024) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007));

Moore v. McCalla Raymer, LLC, 916 F. Supp. 2d 1332, 1341–42 (N.D. Ga. 2013) (detailed facts are not required; just fair notice of the claim). Plaintiff has shored up the pleading on intent with the following allegations of intent and disparate treatment.

First, recall that MS. LARA reported the situation to DR. NEWBREY twice without him taking any action. Paragraph 62 (incorporated into the count but with the added language in **bold**) informs this Court, "After MS. LARA's meeting, **fearing that DR. NEWBREY was not taking MS. LARA's report seriously enough,** MR. GILBERT spoke to DR. NEWBREY alone to make it clear, again, that MR. JANIK had raped MS. LARA and to ensure that DR. NEWBREY would report all information about the matter to the Title IX office." MR. GILBERT, it should be recalled, was MS. LARA's boyfriend at the time.

The proposed amended Complaint adds the bold language to make the disparate treatment and intent more clear.

In the general allegations section, paragraph 53 is added to state:

> 53. DR. NEWBREY informed MR. JANIK (a man) about MS. LARA's accusations, which violated rules about confidentiality of reporting, and MR. JANIK appeared to be incensed by that information, as he later told her—prior to murdering her—that he knew about the report.

And then, in the count alleging disparate treatment based on gender, the following allegations in bold have been added:

137. In determining how to exercise their discretion in responding to reports that MR. JANIK was stalking, abusing, intimidating, sexually harassing, and discriminating against MS. LARA, through information and belief, DR. NEWBREY, MS. SECOY, and CHIEF BENNETT based their decisions on irrational gender stereotypes through the mechanical application of traditional, yet inaccurate, assumptions about the nature of men and women and their proper roles in society, including but not limited to gender stereotypes indicating: that women are unreasonable, irrational, hysterical and hypersensitive; that women overact to situations; that women are spiteful; that women report abuse or harassment to get attention; that women have ulterior motives when they report abuse or harassment; that women are often untruthful when they report abuse or harassment; that men often have a legitimate reason for abusing or harassing women; that women often deserve, encourage, provoke or enjoy the harassment or abuse that they report; that women who look or act a certain way are "tramps" or "sluts;" that women send mixed signals to men; that women cannot be trusted and that men are therefore justified in questioning their fidelity; that men cannot control their primal urges; that women have the power to end harassment or abuse on their own; that a woman who is being harassed or abused will always seek help on their own behalf; that women should be accommodating and subservient to men; that men have the right to exercise authority over women; and/or that women hate men and will take drastic measures to cause them harm.

**138. Putting the above views into practice, Defendants deliberately treated MS. LARA's reports of rape, stalking, and threats as an overreaction or something not requiring immediate steps to ensure MS. LARA's safety. This was done with the intent to discriminate, as discovery on this matter will demonstrate.**

**139. MS. LARA's first two attempts at a complaint to DR. NEWBREY were treated with an attitude that she was more of a troublemaker whose complaints would be lodged for the record than a victim whose safety would, could, and should have been ensured through reasonable steps. DR. NEWBREY responded mostly in terms addressing MS. LARA's reaction, not MR. JANIK's actions. Dr. NEWBREY told MS. LARA that he could see she was "upset," but did not state that anything upsetting (or criminal) had happened. It was only when her male boyfriend re-**

**approached DR. NEWBREY to echo her concerns that Dr. NEWBREY passed the report along.**

**140. And when MS. LARA was accosted right in front of DR. NEWBREY in his class, he did nothing despite his knowledge of the history between the two. Only when a man voiced concerns was anything done.**

**141. In response to DR. NEWBREY's report (marked as "Critical"), MS. SECOY emailed DR. NEWBREY (a male) stating that she would have the counseling center reach out to MR. GILBERT, MS. LARA's male boyfriend, who was not a CSU student.**

**142. On the morning of August 17, 2023, MS. SECOY sent MS. LARA a generic form email suggesting MS. LARA could schedule a meeting with MS. SECOY about Mr. Newbrey's report.**

**143. MS. SECOY'S email to MS. LARA referred to the fact that "support services may be available" but did not explain what those sources were or contain any contact or website information for the Title IX office or the CSU police department.**

**144. The email failed to provide MS. LARA written notice of her rights, options, accommodations, confidentiality protections, victim services, or law enforcement choices.**

**145. The generic email was an action taken by MS. SECOY to respond to DR. NEWBREY's filing of a report—a filing by a man—but took no further steps to interact with MS. LARA, a woman. The only personalized responses were to DR. NEWBREY about a plan to reach out to MR. GILBERT.**

**146. CHIEF BENNETT took no action to respond to a report of rape and active stalking because it was a report by a woman—MS. LARA—and the man's concerns—DR. NEWBREY's filing of a report—were handled administratively by MS. SECOY's generic email response.**

Again, Plaintiff must only assert "plausible" claims in a short, plain statement.

Plaintiff has not been able to depose anyone who has worked with the Defendants or request incident reports, and Defendants will not turn those over prior to the discovery phase. The above allegations add enough meat to the proverbial bone to edge the claims over into "plausible" claims of disparate treatment, not just deliberate indifference. The only time actions were taken were when a man echoed MS. LARA's concerns and when a man, DR. NEWBREY, passed along those concerns to MS. SECOY, which resulted in a form email being sent to MS. LARA but promises to directly reach out to her ***boyfriend***, who was *not even a student*.

**Counts VI and VII Are Omitted Per DE-19**

Without waiving the argument that Count VI was initially sufficiently pled, Plaintiff omits it in the proposed Amended Complaint to reflect that it is no longer pending per this Court's order. Absent the right to conduct discovery, Plaintiff has no new facts at this time to detail the existing training programs meant to educate employees of the Defendants on how to combat rape, stalking, and sexual or dating/domestic violence on campus. Likewise, without discovery and depositions, there are currently no new facts to allege regarding the direct involvement of supervisors with their subordinates.

**Rebecca Lara's Claim**

In DE-19, this Court agreed that REBECCA LARA, the mother and personal representative of the estate of MS. LARA, could bring a 1983 wrongful death claim,

but this Court held that the 1983 claims as alleged in the original complaint did not fairly constitute a distinct claim for wrongful death. At DE-19, page 21, this Court observed:

> Case law in this circuit makes clear that, when a constitutional violation results in a death, there are two categories of claims. There are the claims personal to the decedent that can be brought by the decedent's estate, and there are claims for wrongful death that can be brought by next of kin individually. See Robertson v. Hecksel, 420 F.3d 1254, 1261 (11th Cir. 2005). And the Eleventh Circuit has said that § 1983 incorporates the elements of wrongful death claims from state law. Carringer v. Rodgers, 331 F.3d 844, 849 (11th Cir. 2003).
>
> Here, Count IV asserts a violation of Gisele's equal protection rights. But this count does not purport to be a wrongful death claim, nor does the Complaint ever set forth the elements of a wrongful death claim under Georgia law. [Doc. 1, p. 58]. Accordingly, the Court finds that Plaintiff has not brought a separate wrongful death claim that would allow her to proceed individually. Thus, Plaintiff's individual capacity claims are **DISMISSED**.

The proposed Amended Complaint remedies that defect by removing REBECCA LARA's name from counts I, II, and III and adding a separate 1983 wrongful death claim asserted only by REBECCA LARA. That Count is numbered IV and is inserted prior to Count V (formerly Count VIII), the count seeking interest on the money judgment.

This Court's opinion that such a claim is permissible under 1983 was correct, so the proposed amendment is not futile. This Court correctly relied upon Carringer in its order, and that opinion from the Supreme Court of Georgia states:

> The [wrongful death] statutes ... create a new cause of action and new rights and duties for the prevention of criminal and negligent homicides and to meet social and economic needs. The aim of these statutes is to strike at the evil of the negligent destruction of human life, by imposing liability upon those who are responsible **either directly through themselves or indirectly through their employees** for homicides. It is not beyond the power of the legislature to attempt to preserve human life by making homicide expensive. It may impose an extraordinary liability, such as [the wrongful death] statutes do, not only upon those at fault, but upon those who, **although not directly culpable**, are able nevertheless in the management of their affairs to guard substantially against the evil to be prevented. Western &c. R. Co. v. Michael, 175 Ga. 1, 13, 165 S.E. 37 (1932).

Carringer, 276 Ga. at 363–64 (emphasis supplied). While the Supreme Court of Georgia recognized the cause of action on the state action, it did not find that such a right existed under a section 1983 claim.

The case proceeded up to the Eleventh Circuit—Carringer v. Rogers, 331 F.3d 844 (11th Cir. 2003)—and that court held that 1983 did indeed embrace the right of a survivor to bring a claim as an individual for the wrongful death of their adult child through incorporation of the Georgia statute.

> In Carringer, the plaintiff's son was shot and killed by the son's wife, a police officer, with her service revolver. The decedent's mother brought "a § 1983 claim for the wrongful death of the decedent whose constitutional rights were violated." 331 F.3d at 848. There, we followed Brazier and incorporated Georgia's wrongful death statute into federal law, holding that "Carringer, as a parent, has standing to assert a § 1983 claim for the wrongful death of her son in violation of his constitutional rights." Id. at 850 (emphasis added and footnote omitted).

Robertson v. Hecksel, 420 F.3d 1254, 1261 (11th Cir. 2005). And here, Rebecca Lara has that same exact right. This Court has found that at least one colorable

claim—deliberate indifference—can already proceed, so there is no barrier to the mother's ability to bring such a claim except that Plaintiff inartfully pled that right in the original Complaint. Count IV pleads every element of both the 1983 constitutional deprivation of the decedent's equal protection rights and the elements of the Georgia wrongful death claim that are incorporated into a Georgia federal 1983 claim. In the alternative, the mother asserts Count IV by virtue of her right as administrator of the decedent's estate. This Court should permit Count IV to go forward.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to LR 7.1(D), NDGa, I certify that this document has been prepared in Times New Roman Font 14 point, as approved by the Court in LR 5.1(C), NDGa and is 25 pages or less per Rule 7.1.

By: /s/ *Jordan Redavid*
**JORDAN REDAVID, ESQ.**
*Attorney for Plaintiffs*
Georgia Bar No. 628049

**SIGNATURE OF ATTORNEY**

I hereby certify that on August 14, 2026, a correct copy of the foregoing was electronically served via email on all counsel of record via the PACER CM/ECF online filing portal.

/s/ Jordan Redavid, Esq.
**JORDAN REDAVID, ESQ.**
Georgia Bar No. 628049

FISCHER REDAVID PLLC
510 Shotgun Rd Ste 110
Sunrise, FL 33326-1984
Phone: 954.860.8434
Service@YourChampions.com (eService only)
Jordan@YourChampions.com (Primary)
Crystal@YourChampions.com (Secondary)